**FITAPELLI & SCHAFFER, LLP**
Armando A. Ortiz
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **RODOLFO SOLANO MARTINEZ, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>-against-<br><br>**488 HOSPITALITY GROUP LLC; 790 LOUNGE LLC; MINO HABIB; and PAUL SERES;**<br><br>Defendants. | Case No: 18 Civ. 6333<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Rodolfo Solano Martinez (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself, and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1. This lawsuit seeks to recover minimum wages, overtime wages, spread of hours pay, and other damages for Plaintiff and his similarly situated employees – servers, bussers, food runners, bartenders, barbacks, and other "Tipped Employees" – who work or have worked at The Attic located at 251 West 48th Street, New York, New York 10036 ("The Attic").

2. Owned and/or operated by 488 Hospitality Group LLC, 790 Lounge LLC, Mino Habib, Paul Seres (collectively, "Defendants"), The Attic is a trendy rooftop bar in Manhattan's Theatre District. The Attic features over 4,500 square feet of indoor and outdoor space, and often

features celebrity guests and hosts.

3.      At all times relevant, Defendants paid Plaintiff and all other similarly situated Tipped Employees at a "tipped" minimum wage rate – less than the full minimum wage rate for non-tipped employees.

4.      Defendants, however, have not satisfied the strict requirements under the Fair Labor Standards Act ("FLSA") or the New York Labor Law ("NYLL") that would allow them to pay this reduced minimum wage (*i.e.* take a "tip credit").

5.      In this regard, Defendants failed to provide Tipped Employees with proper notification of the tipped minimum wage rate or tip credit provisions of the NYLL, or of their intent to apply a tip credit to Tipped Employees' wages.

6.      In addition, Tipped Employees are required to perform side work at the start, during, and at the end of every shift.

7.      As a result, Tipped Employees spend more than 20% of their work time and/or in excess of two hours engaged in side work duties.

8.      The duties that Defendants require their Tipped Employees to perform are duties customarily assigned to employees who receive at least the full minimum wage rate.

9.      The side work that Defendants require their Tipped Employees to perform include, but is not limited to:  1) restocking dishware and glassware; 2) setting up and restocking service stations; 3) cutting fruit and mint leaves for drink garnishes; 4) making fruit purees for drinks; 5) setting up the bars, including restocking liquor, wine, and beer; 6) breaking down the bars; 7) sorting and putting away bulk deliveries; 8) refilling ice; 9) setting up and breaking down outdoor furniture; 10) taking trash to the roof and down to the sidewalk; and 11) sweeping and mopping the floors.

10.     The side work that Defendants require of Tipped Employees is not specific to particular customers, tables, or sections, but it is performed in mass quantities for the entire shift or for future shifts.  Furthermore, Defendants required Tipped Employees to perform most of their side work before the restaurant opened or after the restaurant closed and no customers were present.

11.     Defendants' timekeeping system is capable of tracking multiple job codes for different work assignments. Despite this, Tipped Employees are not required to record the amount of time they spend performing side work.

12.     Defendants also failed to pay Plaintiff and other Tipped Employees one and one-half times the full minimum wage rate for all hours worked beyond 40 per workweek.

13.     Defendants also instituted a policy and practice of time shaving.  In this regard, Plaintiff and other Tipped Employees were not paid for all time they spent working, despite being clocked in.

14.     Furthermore, even though Defendants required Plaintiff and other Tipped Employees to work shifts in excess of ten hours per day, Defendants failed to provide spread of hours pay to Plaintiff and all other Tipped Employees.

15.     Plaintiff bring this action on behalf of himself and all similarly situated current and former Tipped Employees who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq*., and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and other similarly situated employees of their lawfully earned wages.

16.     Plaintiff also bring this action on behalf of himself and all similarly situated current and former Tipped Employees pursuant to Federal Rule of Civil Procedure 23 to remedy violations

of the NYLL, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

17.     Plaintiff, individually, also brings claims against Defendants for intentional torts and negligence arising out of an assault and battery that took place at The Attic on July 23, 2017 while Plaintiff was in the middle of a Saturday night shift.

18.     At approximately 2:00 a.m., after yelling obscenities at Plaintiff, Defendant Habib violently pushed Plaintiff in his left shoulder, causing him physical injury.  Defendant Habib then attempted to attack Plaintiff further but was held back by a security guard.  After protesting this assault and battery, Habib terminated Plaintiff's employment.

19.     This is not Habib's first instance of workplace violence.  In this regard, Habib and Defendant 488 Hospitality Group LLC have been previously sued for similar workplace assault and battery against other Tipped Employees.  *See Lopez v. 488 Hospitality Group, LLC d/b/a Attic Rooftop & Lounge and Mino Habib*, Index No. 160648/2015 (Sup. Ct. New York County Oct. 16, 2015).

20.     As a result, Defendants are also liable to Plaintiff for physical, emotional, compensatory, and punitive damages arising out of Habib's intentional torts and Defendants' negligent supervision and retention of Habib.

**THE PARTIES**

**Plaintiff**

      **Rodolfo Solano Martinez**

21.     Rodolfo Solano Martinez ("Martinez") is an adult individual who is a resident of Richmond Hill, New York.

22.     Martinez was employed by Defendants from in or around May 2017 through July 23, 2017 as a barback, a tipped position.

23.     Martinez is a covered employee within the meaning of the FLSA and the NYLL.

24.     A written consent form for Martinez is being filed with this Complaint.

**Defendants**

25.     Defendants have employed and/or jointly employed Plaintiff and similarly situated employees at all times relevant.

26.     Each Defendant has had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

27.     During all relevant times, Defendants have been Plaintiff's employers within the meaning of the FLSA and the NYLL.

**488 Hospitality Group, LLC**

28.     Together with the other Defendants, 488 Hospitality Group, LLC has owned and/or operated The Attic during the relevant time period.

29.     488 Hospitality Group, LLC is a domestic limited liability company organized and existing under the laws of New York.

30.     488 Hospitality Group, LLC is listed as one of the "Premises Name," on the active New York State Liquor License for the premises doing business as "The Attic" located at 790 8th Avenue, 14th Floor, New York, New York 12550.

31.     488 Hospitality Group, LLC is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, 488 Hospitality Group, LLC has employed Plaintiff and similarly situated employees.

32.     At all relevant times, 488 Hospitality Group, LLC has maintained control,

oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.   In this regard, Plaintiff's paystubs list 488 Hospitality Group, LLC as the corporate payor.

33.    488 Hospitality Group, LLC applies the same employment policies, practices, and procedures to all Tipped Employees at The Attic, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, and tips.

34.    Upon information and belief, at all relevant times, 488 Hospitality Group, LLC has had an annual gross volume of sales in excess of $500,000.

**790 Lounge LLC**

35.    Together with the other Defendants, 790 Lounge LLC has owned and/or operated The Attic during the relevant time period.

36.    790 Lounge LLC is a domestic limited liability company organized and existing under the laws of New York.

37.    790 Lounge LLC is listed as one of the "Premises Name," on the active New York State Liquor License for the premises doing business as "The Attic" located at 790 8th Avenue, 14th Floor, New York, New York 12550.

38.    790 Lounge LLC is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, has employed Plaintiff and similarly situated employees.

39.    At all relevant times, 790 Lounge LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

40.    790 Lounge LLC applies the same employment policies, practices, and procedures to all Tipped Employees at The Attic, including policies, practices, and procedures with respect to

payment of minimum wage, overtime compensation, and tips.

41.     Upon information and belief, at all relevant times, 790 Lounge LLC has had an annual gross volume of sales in excess of $500,000.

**Mino Habib**

42.     Upon information and belief, Mino Habib ("Habib") is a resident of the State of New York.

43.     Upon information and belief, at all relevant times, Habib has been a co-owner and operator of 488 Hospitality Group, LLC, 790 Lounge LLC, and The Attic.

44.     At all relevant times, Habib has had power over personnel decisions at The Attic, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.  In this regard, Habib's personal LinkedIn profile identifies him as the current "Managing Partner at Deliah New York & The Attic Rooftop Lounge," listing his job duties as "Day to day operations."[1]  Habib's personal Harri profile also identifies him as having held the position of "Director of F&B" at "The Attic Rooftop Hilton Garden."[2]  He describes his job duties as "[d]irect operations of a very prestigious rooftop lounge.  Duties include ensuring top-notch quality and customer service, managing inventory, Human Resource management including union employees, as well as budgeting and fiscal responsibilities."[3]  Moreover, Habib has given interviews available on YouTube in which he is identified as one of the two owners.[4]

45.     At all relevant times, Habib has had power over payroll decisions at The Attic, including the power to retain time and/or wage records.

---

[1] *See* Mino Habib LinkedIn Profile (*available at* https://www.linkedin.com/in/mino-habib-8aa9851a/) (last accessed July 12, 2018).
[2] *See* Mino Habib Harri Profile (*available at* https://harri.com/people~2Fquery~2Fmino%2520habib) (last accessed July 12, 2018).
[3] *Id.*
[4] *See* VIVEKaterin, Mino Habib – The Attic – Owner Interview, June 15, 2014 (*available at* https://www.youtube.com/watch?v=8W_f5QSKVr0) (last accessed July 12, 2018).

46.     At all relevant times, Habib has been actively involved in managing the day to day operations of The Attic.

47.     At all relevant times, Habib has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

48.     At all relevant times, Habib has had the power to transfer the assets and/or liabilities of The Attic.

49.     At all relevant times, Habib has had the power to declare bankruptcy on behalf of The Attic.

50.     At all relevant times, Habib has had the power to enter into contracts on behalf of The Attic.

51.     At all relevant times, Habib has had the power to close, shut down, and/or sell The Attic.

52.     Habib is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiff and similarly situated employees.

**Paul Seres**

53.     Upon information and belief, Paul Seres ("Seres") is a resident of the State of New York.

54.     At all relevant times, Seres has been an co-owner and operator of The Attic.

55.     Seres is listed as a "Principal," on the active New York State Liquor License for the premises doing business as "The Attic" located at 790 8th Avenue, 14th Floor, New York, New York 12550.

56.     At all relevant times, Seres has had power over personnel decisions at The Attic, including the power to hire and fire employees, set their wages, and otherwise control the terms

and conditions of their employment.

57.    At all relevant times, Seres has had power over payroll decisions at The Attic, including the power to retain time and/or wage records.

58.    At all relevant times, Seres has been actively involved in managing the day to day operations of The Attic.

59.    At all relevant times, Seres has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

60.    At all relevant times, Seres has had the power to transfer the assets and/or liabilities of The Attic.

61.    At all relevant times, Seres has had the power to declare bankruptcy on behalf of The Attic.

62.    At all relevant times, Seres has had the power to enter into contracts on behalf of The Attic.

63.    At all relevant times, Seres has had the power to close, shut down, and/or sell The Attic.

64.    Seres is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiff and similarly situated employees.

## JURISDICTION AND VENUE

65.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

66.    This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

67.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §

1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## COLLECTIVE ACTION ALLEGATIONS

68.     Plaintiff bring the First and Second Causes of Action, FLSA claims, on behalf of himself and all similarly situated persons who work or have worked as Tipped Employees at The Attic in New York, who elect to opt-in to this action (the "FLSA Collective").

69.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the FLSA Collective.

70.     Consistent with Defendants' policy and pattern or practice, Plaintiff and the FLSA Collective were not paid the full minimum wage rate for all hours worked up to 40 per workweek and premium overtime compensation for all hours worked beyond 40 per workweek.

71.     All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

72.     As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

> (a) willfully failing to pay their employees, including Plaintiff and the FLSA Collective, minimum wages for all hours worked up to 40 per workweek and premium overtime wages for all hours worked in excess of 40 hours per workweek.

## CLASS ACTION ALLEGATIONS

73.     Plaintiff brings the Third, Fourth, Fifth, Sixth, and Seventh Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons consisting of:

> All persons who work or have worked as Tipped Employees at The Attic in New York between July 12, 2012 and the date of final judgment in this matter (the "Rule 23 Class").

74.    The members of the Rule 23 Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

75.    There are more than fifty members in the Rule 23 Class.

76.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Rule 23 Class, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 Class in separate actions.

77.    Plaintiff and the Rule 23 Class have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all members of the Rule 23 Class similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each member of the Rule 23 Class.

78.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and have no interests antagonistic to the Rule 23 Class.

79.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

80.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

81.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the members of the Rule 23 Class individually and include, but are not limited to, the following:

(a) whether Defendants failed to pay Plaintiff and the Rule 23 Class full minimum wages for all of the hours they worked up to 40 hours per workweek;

(b) whether Defendants correctly compensated Plaintiff and the Rule 23 Class for hours worked in excess of 40 per workweek;

(c) whether Defendants failed to pay Plaintiff and the Rule 23 Class spread of hours pay as required by the NYLL;

(d) whether Defendants failed to furnish Plaintiff and the Rule 23 Class with proper annual wage notices, as required by the NYLL; and

(e) whether Defendants failed to furnish Plaintiff and the Rule 23 Class with accurate statements with every payment of wages, as required by the NYLL.

### PLAINTIFF'S FACTUAL ALLEGATIONS

82.     Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**Rodolfo Solano Martinez**

83.     During his employment, Martinez generally worked the following scheduled hours unless he missed time for vacation, sick days, and/or holidays: approximately 3 to 4 shifts per week, usually consisting of Thursday, Friday, Saturday, and Sunday shifts.  Weekday shifts would generally last from 3:00 p.m. through 2:30/3:00 a.m.  Weekend shifts, such as Friday and Saturday

shifts, would generally last from 3:00 p.m. through 6:00 a.m., although sometimes Plaintiff was required to stay as late as 8:00 a.m.

84.     Throughout his employment, Defendants have applied a tip credit towards the minimum wage rate paid to Martinez for work performed as a barback.

85.     Defendants failed to properly notify Martinez either in writing of the tip credit provisions of the NYLL or of their intent to apply a tip credit to his wages.

86.     Defendants have suffered or permitted Martinez to perform non-tip producing side work for more than 20% and/or 2 hours on a consistent basis, including pre-shift side work, running side work, and closing side work.  These duties included but were not limited to: 1) restocking dishware and glass ware; 2) setting up and restocking service stations; 3) cutting fruit and mint leaves for garnishes; 4) making fruit purees for drinks; 5) setting up the bars, including restocking liquor, wine, and beer; 6) breaking down the bars; 7) sorting and putting away bulk deliveries; 8) refilling ice; 9) setting up and breaking down outdoor furniture; 10) taking trash to the roof and to the street; and 11) sweeping and mopping the floors.

87.     Furthermore, Defendants consistently suffered or permitted Martinez to work over 40 hours per week.  During such workweeks, Defendants did not compensate Martinez at time and one-half the full minimum wage rate for all of the overtime hours he worked.

88.     Based on information and belief, Defendants instituted a policy and practice of time shaving.  In this regard, despite being clocked in while working, Plaintiff was not compensated for all hours that he worked, especially for work performed after The Attic closed to the public in the early morning hours.

89.     In addition, Defendants failed to compensate Martinez with spread of hours pay for all instances where the length between the beginning and end of his workday was greater than 10 hours in violation of the NYLL.

90.     Defendants failed to furnish Martinez with proper annual wage notices, as required by the NYLL.

91.     Defendants failed to furnish Martinez with proper wage statements, listing the rates paid, gross wages, and the claimed tip allowance, as required by the NYLL.

92.     On July 23, 2017, Plaintiff was the victim of an assault and battery committed by Defendant Habib while in the scope of his employment.

93.     Specifically, at approximately 2:00 a.m., Plaintiff was working as a barback at The Attic during his normal scheduled shift.  Habib was also working at The Attic in his role as co-owner and operator.

94.     While Plaintiff was carrying a large tray of dirty glassware through The Attic, he was stopped by Habib.  Habib then began to verbally harass Plaintiff by yelling "move motherfucker!" and "motherfucker move your ass!"  Immediately after this yelling, Habib violently pushed Plaintiff in his left shoulder, causing physical injury.  Habib then attempted to hit Plaintiff again but was held back by a security guard.

95.     Based on information and belief, Habib is a trained mixed martial arts fighter.

96.     After protesting this assault and battery, Habib terminated Plaintiff's employment.

97.     Defendants had prior knowledge of Habib's history of workplace violence.  In this regard, Habib and 488 Hospitality Group LLC were previously sued for similar violent acts committed by Habib.  *See See Lopez v. 488 Hospitality Group, LLC d/b/a Attic Rooftop & Lounge and Mino Habib*, Index No. 160648/2015 (Sup. Ct. New York County Oct. 16, 2015).

98.     Despite this knowledge, Defendants did nothing to protect Plaintiff from Habib's dangerous history of workplace violence.

99.     Defendants are vicariously liable for Habib's intentional torts, as they were committed while Habib was acting within the scope of his employment.

100.    Due to Defendants' actions, Plaintiff has suffered physical injury, severe emotional distress, mental anguish, embarrassment, and humiliation.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Minimum Wages
### (Brought on behalf of Plaintiff and the FLSA Collective)

101.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

102.    At all times relevant, Plaintiff and the FLSA Collective were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*, and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

103.    At all times relevant, Plaintiff and the FLSA Collective were or have been employees within the meaning of 29 U.S.C §§ 201 *et seq.*

104.    At all times relevant, Defendants have been employers of Plaintiff and the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C §§ 201 *et seq.*

105.    At all times relevant, Defendants have been required to pay directly to Plaintiff and the FLSA Collective the full minimum wage rate for all hours worked.

106.    Defendants have not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.* because Defendants required

Plaintiff and the FLSA Collective to perform a substantial amount of non-tip producing "side work" in excess of 20% of their time at work. During these periods, Defendants have compensated Plaintiff and the FLSA Collective at the tipped minimum wage rather than the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq.*

107.    Defendants also failed to pay Plaintiff and the FLSA Collective the full minimum wage for all hours worked.

108.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

109.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

110.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective.

111.    Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times the full minimum wage rate – for all hours worked beyond 40 per workweek.

112.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs,

and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## THIRD CAUSE OF ACTION
### New York Labor Law – Minimum Wages
### (Brought on behalf of Plaintiff and the Rule 23 Class)

113.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

114.    At all times relevant, Plaintiff and the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Rule 23 Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

115.    Defendants have failed to pay Plaintiff and the Rule 23 Class the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

116.    Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiff and the Rule 23 Class the full minimum wage, for all hours worked up to and including 40 per workweek, at a rate of (a) $7.25 per hour from February 2012 through December 30, 2013; (b) $8.00 per hour from December 31, 2013 through December 30, 2014; (c) $8.75 per hour from December 31, 2014 through December 30, 2015; and (d) $9.00 per hour from December 31, 2015 through December 30, 2016; (e) $11.00 per hour from December 31, 2016 through December 30, 2017; and (f) $13.00 per hour from December 31, 2017 through the present.

117.    Defendants have failed to notify Plaintiff and the Rule 23 Class of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

118.     Defendants also required Plaintiff and the Rule 23 Class to perform a substantial amount of non-tipped "side work" in excess of 2 hours or more, or 20% of their work time.  During these periods, Plaintiff and the Rule 23 Class were engaged in a non-tipped occupation.

119.     Due to Defendants' violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

### FOURTH CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### (Brought on behalf of Plaintiff and the Rule 23 Class)

120.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

121.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiff and the Rule 23 Class.

122.     Defendants failed to pay Plaintiff and the Rule 23 Class the premium overtime wages to which they were entitled to under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times the full minimum wage rate – for all hours worked beyond 40 per workweek.

123.     Due to Defendants' violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Spread of Hours Pay**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

124.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

125.    Defendants have failed to pay Plaintiff and the Rule 23 Class the additional compensation of one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the beginning and end of their workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours in violation of the NYLL.

126.    Due to Defendants' violations of the NYLL, Plaintiff and Rule 23 Class are entitled to recover from Defendants their unpaid spread of hours wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**SIXTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Proper Annual Wage Notices**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

127.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

128.    Defendants have failed to furnish Plaintiff and the Rule 23 Class with proper annual wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with

NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

129.    Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff and the Rule 23 Class are entitled to statutory penalties of fifty dollars each workday that Defendants failed to provide Plaintiff and the Rule 23 Class with annual wage notices, or a total of five thousand dollars each, and reasonable attorneys' fees and costs, as provided for by NYLL, Article 6, § 198(1-b).

**SEVENTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

130.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

131.    Defendants failed to supply Plaintiff and the Rule 23 Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

132.    Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiff and the Rule 23 Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, and

reasonable attorneys' fees and costs, as provided for by NYLL, Article 6, § 198 (1-d).

## EIGHTH CAUSE OF ACTION
### Assault
### (Brought on behalf of Plaintiff against all Defendants)

133.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

134.    Defendant Habib, in perpetrating the above described conduct, placed Plaintiff in apprehension and fear of unwanted, unwarranted, unsolicited physical touching of his person by Habib in a manner that was harmful and offensive to Plaintiff and would be harmful and offensive to any reasonable person.

135.    Given Defendants' knowledge of Habib's hostile behavior directed at Plaintiff and others, Defendants could have reasonably anticipated and could have prevented such an assault.

136.    As a consequence of Habib's conduct, Plaintiff has suffered physical injury, severe emotional distress, mental anguish, embarrassment, and humiliation

137.    That the aforesaid conduct of Defendants and their managers, agents and/or employees shows a deliberate, willful, wanton and reckless disregard of Plaintiff's rights, and deprived Plaintiff of his rights under New York Law, thereby entitling him to an award of punitive damages.

## NINTH CAUSE OF ACTION
### Battery
### (Brought on behalf of Plaintiff against all Defendants)

138.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

139.    Defendant Habib, in perpetrating the above described conduct, touched Plaintiff in a manner that was both harmful and offensive to Plaintiff and in a manner that any reasonable

person would similarly find harmful and offensive.  Plaintiff did not consent to such harmful and offensive touching by Habib.

140.    Given Defendants' knowledge of Habib's hostile behavior directed at Plaintiff and others, Defendants could have reasonably anticipated and could have prevented such a battery.

141.    As a consequence of Habib's conduct, Plaintiff has suffered physical injury, severe emotional distress, mental anguish, embarrassment, and humiliation

142.    That the aforesaid conduct of Defendants and their managers, agents and/or employees shows a deliberate, willful, wanton and reckless disregard of Plaintiff's rights, and deprived Plaintiff of his rights under New York Law, thereby entitling him to an award of punitive damages.

### TENTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**
**(Brought on behalf of Plaintiff against all Defendants)**

143.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

144.    Defendant Habib, in perpetrating the above described conduct, willfully and intentionally caused Plaintiff to suffer severe emotional distress without any just cause or provocation.

145.    Given Defendants' knowledge of Habib's hostile behavior directed at Plaintiff and others, Defendants could have reasonably anticipated and could have prevented such an infliction of emotional distress.

146.    As a consequence of Habib's conduct, Plaintiff has suffered physical injury, severe emotional distress, mental anguish, embarrassment, and humiliation.

147.    That the aforesaid conduct of Defendants and their managers, agents and/or

employees shows a deliberate, willful, wanton and reckless disregard of Plaintiff's rights, and deprived Plaintiff of his rights under New York Law, thereby entitling him to an award of punitive damages.

## ELEVENTH CAUSE OF ACTION
### Negligent Hiring, Retention and Supervision
### (Brought on behalf of Plaintiff against Defendants 488 Hospitality Group, 790 Lounge LLC, and Paul Seres)

148.   Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

149.   At all times relevant, Defendants owed Plaintiff a duty of care as his employer to provide a reasonably safe environment for all employees.

150.   Defendant breached this duty of care when it allowed Defendant Habib to commit the aforementioned acts against Plaintiff.

151.   Defendants knew or should have known of Habib's history of violent behavior to commit the aforementioned actions.

152.   The aforementioned actions were committed on the employer's premises.

153.   As a direct result of Defendants' negligence, Plaintiff has suffered damages and injuries, including, but not limited to, physical injury, severe emotional distress, mental anguish, embarrassment, and humiliation.

154.   That the aforesaid conduct of Defendants and their managers, agents and/or employees shows a deliberate, willful, wanton and reckless disregard of Plaintiff's rights, and deprived Plaintiff of his rights under New York Law, thereby entitling him to an award of punitive damages.

## JURY DEMAND

155.   Plaintiff requests a jury trial on issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A.      That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all Tipped Employees who are presently, or have at any time during the six years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked at The Attic in New York.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.      Unpaid minimum wages, unpaid overtime compensation, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.      Unpaid minimum wages, unpaid overtime compensation, spread of hours pay, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.      Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiff and the Rule 23 Class with proper annual wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

G.      Statutory penalties of two hundred fifty dollars for each workday that Defendants

failed to provide Plaintiff and the Rule 23 Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

       H.     An award of damages in an amount to be determined at trial, plus prejudgment interest to compensate Plaintiff for all monetary and/or economic damages;

       I.     An award of damages in an amount to be determined at trial, plus prejudgment interest to compensate Plaintiff for all non-monetary damages, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress, anxiety, loss of self esteem, loss of self confidence, loss of personal dignity and any other physical and mental injuries;

       J.     An award of punitive damages in an amount to be determined at trial;

       K.     Prejudgment and post-judgment interest;

       L.     Reasonable attorneys' fees and costs of the action; and

       M.     Such other relief as this Court shall deem just and proper.

Dated: New York, New York
      July 12, 2018

                          Respectfully submitted,

                          /s/ Armando A. Ortiz
                          Armando A. Ortiz
                          (AO2120)

                          **FITAPELLI & SCHAFFER, LLP**
                          Armando A. Ortiz
                          28 Liberty Street, 30th Floor
                          New York, NY 10005
                          Telephone: (212) 300-0375

                          *Attorneys for Plaintiff and*
                          *the Putative Class*

## FORMULARIO DE CONSENTIMIENTO DE UNIÓN

1.      Doy mi consentimiento para ser parte demandante en una demanda contra THE ATTIC y / o entidades e individuos relacionados con el fin de obtener reparación por violaciones de la Fair Labor Standards Act, (*Ley de las Normas Laborales Justas*) de conformidad con 29 USC § 216(b).

2.      Al firmar y devolver este formulario de consentimiento, yo designo Fitapelli & Schaffer, LLP ("La Firma") para representarme y hacer decisiones en mi defensa acerca del caso y cualquier acuerdo extrajudicial. Entiendo que costos razonables hechos en mi defensa serán deducido de cualquier acuerdo extrajudicial o juicio será prorrateado entre todos los otros demandantes. Entiendo que la firma peticionara con la Corte para conseguir los costos de abogado de cualquier acuerdo extrajudicial o juicio en la suma que será el mayor de lo siguiente: (1) la suma "lodestar", que es calculada por multiplicar una tarifa por hora razonable por los números de horas dedicado a la demanda, o (2) 1/3 del total bruto del acuerdo judicial o juicio. Estoy de acuerdo de ser vinculado a cualquier proceso legal de este asunto por la Corte, sea favorable o desfavorable.

Firma (Signature)


Rodolfo Solano Martinez

Nombre legal completo (Imprenta) (Full Legal Name (Print))